Case 05-10567    Filed 09/29/05    Doc 92

POSTED ON WEB SITE

FILED

SEP 2 9 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Nora J. Rivera,<br><br>        Debtor.<br><br>United States of America on behalf of the<br>Internal Revenue Service,<br><br>        Movant. | Case No. 05-10567-B-13<br><br>DC No. IRS-1 |

**MEMORANDUM DECISION REGARDING INTERNAL
REVENUE SERVICE'S MOTION FOR RELIEF FROM STAY**

James A. Whitten, Esq., Special Assistant for United States Attorney, appeared telephonically for Movant, United States of America on behalf of the Internal Revenue Service ("IRS").

Bruce Leichty, Esq., of the Law Offices of Bruce Leichty, appeared for debtor Nora J. Rivera (the "Debtor").

James Flanagan, Esq., appeared for M. Nelson Enmark, Esq., chapter 13 trustee.

      The IRS' Motion for Relief From the Automatic Stay (the "Motion") was heard on July 14, 2005. The IRS seeks authority to offset the Debtor's 2004 income tax overpayment against her pre-petition tax liability. The court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334 and 11 U.S.C. §§ 362 & 553. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G) & (O). This Memorandum contains the court's findings of fact and conclusions of law. For the reasons set forth below, the Motion will be GRANTED.

**Background.**

      This bankruptcy commenced with a voluntary petition filed under chapter 13 on January 26, 2005. The Debtor's schedules filed with the petition listed two unpaid pre-petition tax liability to the IRS totaling $69,061. Schedule B listed a "Projected 2004 income tax refund" valued at $1,500. The Debtor did not claim an exemption of the tax refund.

On February 14, 2005, the Debtor received from the IRS two Notices of Intent to Levy on unspecified assets, based on the pre-petition tax liability. On February 22, 2005, Debtor's counsel sent a letter to the IRS notifying it of the bankruptcy filing. The IRS did not levy any of the Debtor's assets. On or about February 28, 2005, the Debtor filed her federal income tax return for tax year 2004. On that return, she claimed that her estimated taxes had been overpaid in the amount of $3,681 which the IRS has not disputed. The 2004 tax return was not in the record. However, the court can infer from the Debtor's fervent opposition to this Motion, that she requested a refund of the overpayment (the "2004 Overpayment"). On February 28, 2005, the IRS sent to the Debtor a letter notifying her that the 2004 Overpayment had been applied to the unpaid tax liability. The 2004 Overpayment is now under "administrative freeze."

On April 11, 2005, the IRS filed a proof of claim. That proof of claim stated a general unsecured claim in the amount of $5,180.95 for taxes, interest, and penalties relating back to the 1996, 1997, and 1998 tax years (the "Unsecured Tax Claim"). The proof of claim also stated a priority unsecured claim in the amount of $3,747.99 for taxes and interest relating back to the 1999 and 2000 tax years (the "Priority Tax Claim"). The IRS' total claim is $8,928.94.

On April 14, 2005, the Debtor filed her Third Amended Chapter 13 Plan (the "Plan"). The Plan provides for monthly payments to the chapter 13 trustee in the amount of $2,709, over a period of 54 months. It provides for treatment of the IRS' Priority Tax Claim in Class 5, payable over an unspecified term without interest. It also provides for 100% payment of all general unsecured claims, which would include the Unsecured Tax Claim, payable over the life of the Plan without interest. The Plan was served on creditors by first-class mail on April 14, 2005, together with a notice of hearing and a motion to confirm the Plan. The IRS did not object to confirmation of the Plan.

On April 26, 2005, the Debtor filed amended schedules in which she declared "Projected 2004 income tax refunds - IRS and CA" valued at $4,000. Again, the projected tax refunds were not exempt. At some time prior to filing this Motion, the IRS placed an administrative hold on the 2004 Overpayment which prevents the money from being returned to the Debtor. On June 13, 2005, the IRS filed this Motion seeking relief from the automatic stay to offset the 2004

Overpayment against the Priority Tax Claim. On June 15, 2005, the court entered an order confirming the Plan.

**Analysis.**

The IRS contends that it has a statutory right to offset the pre-petition 2004 Overpayment against the Priority Tax Claim pursuant to 26 U.S.C. subsection 6402(a)[1] and 11 U.S.C. § 553(a).[2] There is no dispute that the 2004 Overpayment occurred in a tax year that concluded before commencement of the bankruptcy case and that the elements for setoff under § 553(a) are satisfied. The Debtor acknowledges that in her opposition brief.

The Debtor vehemently opposes the Motion. She contends that full payment of her tax liability is provided for in the confirmed Plan, that the IRS did not declare a right of setoff in its proof of claim, that the IRS did not object to confirmation of the Plan, and that the IRS is now bound by the Plan to accept payment of its claim through the Plan. She also contends that the IRS violated the automatic stay under, *inter alia*, 11 U.S.C. § 362(a)(7)[3] by serving the notices of

---

[1] 26 U.S.C. subsection 6402(a) states:

General rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

[2] 11 U.S.C. subsection 553(a) states in pertinent part:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

[3] 11 U.S.C. subsection 362(a)(7) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of–
. . .
(7) the setoff of any debt owing to the debtor that arose before the

intent to levy on the Debtor and by actually setting off the 2004 Overpayment before administratively freezing it. She demands that the 2004 Overpayment be turned over to her and that the IRS should be sanctioned pursuant to 11 U.S.C. § 362(h).[4] She also requests an award of attorney fees for having to oppose the Motion.

The Debtor argues that the IRS is now bound by the confirmed Plan, which allows the Debtor to fully pay both the Priority and the Unsecured Tax Claims, over a period of up to 54 months without interest through the chapter 13 trustee. The authority for this argument lies in 11 U.S.C. § 1327(a) which states:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

Conversely, there is no question that the IRS has a statutory right to offset the 2004 Overpayment against the Debtor's tax liability pursuant to 26 U.S.C. § 6402(a). 11 U.S.C. subsection 523(a) expressly preserves the IRS' right of offset under certain conditions, all of which are satisfied here. Therein lies the apparent contradiction: the Plan does not provide for an offset. Neither does it provide for nor require the IRS to turnover the 2004 Overpayment. However, resolution of this conflict lies in the language of subsection 553(a) itself.

> Except as otherwise provided in this section and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset* a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . . (emphasis added.)

By the plain language of subsection 553(a), no provision of title 11, except sections 362 and 363, can be interpreted to effect or impair a creditor's right of offset - that limitation necessarily excludes the provisions of subsection 1327(a).

The Fifth Circuit reached a similar conclusion in *Internal Revenue Service v. Luongo (In*

---

commencement of the case under this title against any claim against the debtor.

[4]The Debtor did not file an adversary proceeding for turnover of the 2004 Overpayment, as required by Fed.R.Bankr.P. 7001(1). Neither did she file and serve a counter-motion for sanctions. The court will address those issues herein because neither argument has merit and further proceedings to reach that conclusion would be a waste of time and resources.

*re Luongo)*, 259 F.3d 323 (5th Cir. 2001). In *Luongo*, the IRS set off its claim against the chapter 7 debtor's pre-petition tax overpayment. The debtor had already received a discharge of her tax liability and the case had been closed, so the automatic stay was not an issue. The debtor reopened her case, amended her schedules to disclose, for the first time, and exempt the tax overpayment, and she filed an adversary proceeding against the IRS to recover the money.

On cross-motions for summary judgment, the bankruptcy court ruled in favor of the debtor based on her exemption of the overpayment and the language of 11 U.S.C. subsection 522(c) which stated: "property exempted under this section [522] is not liable . . . for any debt of the debtor that arose . . . before the commencement of the case . . . ." The trial court construed the "not liable for any debt" language of subsection 522(c) to take precedence over the "does not affect any right to offset" language in subsection 553(a). The district court reversed, and the Court of Appeals affirmed the district court.

The court first looked to the "clear statement" of subsection 553(a) that "this title [the Bankruptcy Code] does not affect any right of a creditor to offset." *Id.* at 333. The court then looked at the decisions of other courts, including the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Buckenmaier*, 127 B.R. 233 (9th Cir. BAP 1991), which have construed subsection 553 to take priority over the discharge injunction of subsection 524(a) – a creditor's right of setoff is not barred by the debtor's discharge because § 524 is not a listed exception to subsection 553(a).

Finally, looking to 26 U.S.C. § 6402(a), the *Luongo* court concluded that the debtor was, "only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability." *Id.* at 335 *citing In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989). Based thereon, the court concluded that neither the discharge injunction, nor the exemption of Ms. Luongo's tax refund could prevent the IRS from exercising its statutory right of offset.

Here, subsection 1327(a) is not one of the stated exceptions to subsection § 553(a). This court, therefore, concludes that the IRS has a statutory right to credit the 2004 Overpayment against its tax claim which is not impaired by the confirmed Plan. Neither is the IRS prejudiced by the fact that it did not acknowledge the setoff in its proof of claim. A proof of claim can be

amended at any time so long as the amendment relates back to the original claim and there is no prejudice to the Debtor. The court can deem the IRS' Motion to be an informal amendment of the claim. It would be superfluous to require the IRS to formally amend its claim just so the court could grant this Motion. The Debtor has not shown any prejudice as a result of the IRS' handling of this matter, other than her statement that she needs the 2004 Overpayment to pay for car repairs.

The IRS' right to offset the 2004 Overpayment has always existed, as a matter of law. The Debtor knew that she owed thousands of dollars in unpaid taxes to the IRS when she filed her bankruptcy petition. She knew that the 2004 taxes had been overpaid when she filed her bankruptcy petition. She knew the exact amount of that overpayment when she filed her 2004 tax return, long before she filed her Plan. As a matter of law, she was deemed to know that the IRS had a right to credit the 2004 Overpayment to her tax liability pursuant to § 6402(a), regardless of whether she had an actual understanding of that right. The Debtor could have provided for the setoff as partial payment of the Priority Tax Claim in her Plan, and thereby realized the immediate economic benefit of a reduced claim and reduced payments to the chapter 13 trustee. For some reason she chose not to, opting instead to pay the Priority Tax Claim through the Plan, together with the added burden of the chapter 13 trustee fees. If the Debtor somehow relied on a belief that the IRS would have to surrender the 2004 Overpayment, and thereafter wait for the Plan payments, then she was mistaken.

The Debtor argues that the right of setoff, standing alone, is not cause to grant relief from the automatic stay. The court disagrees - there are many reasons to grant the Motion. For example, denial of the Motion would be a blatant disregard of the obvious intent of Congress when it enacted 26 U.S.C. § 6402(a) – that the IRS should have a right to credit an overpayment against taxes owed. Denial of the Motion would be tantamount to denial of the IRS' status as a secured creditor under 11 U.S.C. § 506(a).[5] Denial of the Motion without a turnover order would

---

[5] 11 U.S.C. § 506(a) states in pertinent part:

An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title,

be meaningless because neither the Debtor nor the IRS would benefit from the money. Denial of the Motion coupled with a turnover order would have the practical effect of avoiding the IRS' lien rights under § 506(a) even though the Debtor has not brought an adversary proceeding, or otherwise shown grounds to avoid or subordinate those rights. Denial of the Motion, coupled with a turnover order, would effectively force the IRS to finance a portion of the Plan from its cash collateral, without any showing of adequate protection as required by 11 U.S.C. § 363(e).

Finally, denial of the IRS' Motion will have a substantial economic impact on both the IRS and the Debtor. Under the Plan, the IRS will be forced to wait months for payment of its Priority Tax Claim, without interest. The IRS would lose the present value of its interest in the 2004 Overpayment. Under the Plan, the Debtor loses the benefit of having her priority obligation to the IRS immediately reduced and virtually eliminated. She will have to make higher payments each month to the chapter 13 trustee, thus increasing the risk of Plan failure. She will also have to pay the chapter 13 trustee's fees that are added to all monies distributed through the trustee. Denial of the IRS' Motion would have no apparent overall benefit for either party and that alone is cause to grant relief.

**The Debtor is Not Entitled to Sanctions.**

The Debtor contends that the IRS should be sanctioned because it sent levy notices and initially setoff the 2004 Overpayment, without first getting relief from the automatic stay. The remedy for violation of the automatic stay lies in 11 U.S.C. subsection 362(h).[6] The evidence is inconclusive as to when and if the IRS actually set off the 2004 Overpayment. However, even if it did, the Debtor's request for sanctions must be denied for two reasons.

First, if the IRS offset the 2004 Overpayment before reversing the offset and filing this Motion, what was the effect of that action? If the IRS violated the automatic stay, then there is

---

is a secured claim . . . to the extent of the amount subject to setoff . . . .

[6]11 U.S.C. subsection 362(h) states:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

no argument that the act was void as a matter of Ninth Circuit law. *Schwartz v. United States of America (In re Schwartz)*, 954 F.2d 569, 570-72 (9th Cir. 1992). (Post-petition tax assessment in violation of the automatic stay was void and given no effect in a subsequent bankruptcy proceeding.) The IRS says that the 2004 Overpayment is now under administrative freeze. The question of whether the exercise of setoff violated the automatic stay is now moot. It is well established that the placing of funds in administrative freeze pending a motion for relief to exercise the right of setoff is not in itself a violation of the automatic stay. *Citizen's Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 290, 133 L.Ed. 2d. 258 (1995).

The Debtor has not shown that the IRS engaged in any conduct sufficiently egregious to warrant punishment. An award of punitive damages under section 362(h) requires not only a willful violation of the automatic stay, but also a finding of "appropriate circumstances." Courts have generally interpreted this language to require that the disputed acts be egregious, vindictive, malicious, or accompanied by bad faith. *United States v. Ketelsen (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir. 1989); *Crysen/Montenay Engergy Co. v. Esselen Assocs., Inc. (In re Crysen-Montenay Engergy Co.)*, 902 F.2d 1098, 1105 (2nd Cir. 1990); *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168 (9th Cir. BAP, 1995).

In the present case, even if the IRS "willfully" violated the automatic stay through the mailing of a levy notice and setoff of the 2004 Overpayment, there is absolutely no evidence to suggest that the IRS' acts were egregious, vindictive, malicious, or accompanied by bad faith. The IRS' prompt remediation of the problem mitigates against the imposition of punitive damages. *See Cox v. Billy Pound Motors, Inc. (In re Cox)*, 214 B.R. 635, 646 (Bkrtcy.N.D.Ala 1997).

Courts have shown a tendency to award punitive damages where creditors have acted egregiously in violating the automatic stay, or have continued to persist in a course of conduct once it becomes clear that such conduct violates the automatic stay. In *Knaus v. Concordia Lumber Company, Inc. (In Re Knaus)*, 889 F.2d 773 (8th Cir. 1989), the court reviewed an award of punitive damages where a creditor not only refused to turn over property in violation of the automatic stay, but also attempted to have the debtor excommunicated from his church for

having declared bankruptcy. The court affirmed the award, holding that the creditor's actions were sufficiently egregious to warrant punitive damages. *Id.* Similarly, in *In re Gault*, 136 B.R. 736 (Bkrtcy.E.D.Tenn. 1991), a bankruptcy court concluded that punitive damages were appropriate where the Internal Revenue Service, *after acknowledging that the automatic stay precluded it from proceeding against the debtor*, nonetheless proceeded to serve notice of intent to levy on both the debtor and her nondebtor husband.

Courts have generally declined to award punitive damages where creditors acted in a mistaken belief that their conduct was lawful and promptly remedied the violation once their mistake became known. In *Cox*, the bankruptcy court declined to award punitive damages where the creditor, acting under a mistaken belief that the bankruptcy case had been dismissed, repossessed the debtor's car, but promptly returned the vehicle upon learning that the case had in fact not been dismissed. Similarly, in *In re Lord*, 270 B.R. 787(Bkrtcy.M.D.Ga. 1998), the bankruptcy court declined to award punitive damages where it appeared that the stay violation was the result of carelessness or negligence, rather than an intentional act of misconduct.

The facts of the present case closely mirror the latter examples where courts have declined to award punitive damages for a violation of the automatic stay. The setoff itself was always a void act. The IRS promptly remedied the problem and reversed the setoff once it became aware of the error. The Debtor's interest, if any, in the 2004 Overpayment was never impaired and the Debtor suffered no actual injury. Based on this record, the court cannot find that the IRS' acts were egregious, vindictive, malicious, or accompanied by bad faith such as to warrant punitive damages.

The Debtor does not allege in opposition to the Motion that she has, or will, suffer any actual harm as a result of anything the IRS may have done. Indeed, it appears that the Debtor will actually benefit from the offset because it will virtually eliminate the IRS' Priority Tax Claim. Nevertheless, the Debtor argues that the IRS should be punished solely because, in Debtor's counsel's words, "the IRS is not God and the IRS is not allowed to just act above the law."[7]

---

[7]The Debtor's efforts to oppose this Motion do not appear to be based on economic reality. The Debtor has committed through the Plan to fully pay her liability to the IRS. It must,

9

The remedial application of subsection 362(h) is not intended for the Debtor's monetary gain. "[Sub]ection 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment." *McHenry*, 179 B.R. at 169. In *McHenry*, the bankruptcy court rejected the debtors' application for punitive damages based on a creditor's violation of the automatic stay. In affirming the bankruptcy court's decision, the BAP observed

---

therefore, be paid one way or another. Yet the Debtor filed a 36 page opposition, including a 13 page points and authorities, 8 pages of declarations with a request for judicial notice and 15 pages of exhibits. The Debtor's attorney also appeared at the hearing to argue against the Motion. It is clear to the court that the legal fees for the Debtor's opposition, if approved by the court, will consume a large part, if not all, of the 2004 Overpayment which the Debtor seeks to recover. The following excerpt from the transcript of the hearing suggests that the Debtor is angry with the IRS and that the Debtor's opposition is focused not so much on achieving a beneficial result, but more in furtherance of her goal to punish the IRS for some reason that is not clear from the record:

MR. LEICHTY: . . . The IRS has not shown cause, it has not even purported that it needs to show cause. It's simply acted without getting relief from this court. I think that a number of courts have made it very clear that that tramples on the prerogatives of a bankruptcy court and the Court should be concerned about that.

THE COURT: They fixed - - they reversed - - whatever they did, it's been reversed, and as I understand it, the refund's now in administrative freeze, so I'm not offended by that.

MR. LEICHTY: With all due respect, your Honor, I think you should be. And I hope that some court would be, because the IRS is not God and the IRS is not allowed to just act above the law. And that's something that's - - you know, that's - - there's a long tradition of that in this country.

THE COURT: So you want me to punish the IRS - -

MR. LEICHTY: Absolutely.

THE COURT: - - for something that they did administratively, and so is that what this is all about?

MR LEICHTY: No. This is all about observing the law, your Honor. The IRS is not above the law. The IRS acted in violation of the law. The debtor did everything she was supposed to do in this matter and the debtor is entitled to those funds.
The IRS should not be rewarded. And in fact, the IRS should be sanctioned . . . .

that there is no appropriate way to measure punitive damages when the offended party has not suffered actual damages. *Id.* at 169. The BAP concluded that "no punitive damages should be awarded in the absence of actual damages." *Id.* at 168. In the present case, the IRS may have technically violated the automatic stay by sending levy notices and then setting off the 2004 Overpayment for a short period of time, but the Debtor suffered no actual damages as a result and the setoff was promptly reversed. The court concludes that sanctions are not appropriate in the present case.

The second reason for rejecting the Debtor's argument is more pragmatic. The Debtor argues, "[The IRS'] rights are subject to the automatic stay of Section 362(a)(7). *Congress would not have imposed a stay under these circumstances* if all the IRS is required to do is come to court and ask that it be lifted." (emphasis added.) At oral argument, Debtor's counsel insisted that this court should be outraged by the IRS' handling of the 2004 Overpayment and its refusal to give the money back to the Debtor. (*See* footnote 7, *supra.*) For guidance on this issue, the court need only look to the United States Congress itself, the governing body that created the automatic stay in the first place. Congress recently amended the Bankruptcy Code with passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. 109-8, 119 Stat. 23) ("BAPCPA"), effective with cases filed October 17, 2005. If this case had been filed under BAPCPA, the IRS would not have to come to court at all to setoff the 2004 Overpayment. BAPCPA includes a new subsection 362(b)(26) which expressly exempts the setoff of pre-petition tax refunds from the automatic stay. It states in pertinent part,

> The filing of a petition under section 301, 302, or 303 of this title, . . . does not operate as a stay–
> . . .
>
> "[U]nder subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief . . . ."

Although new subsection 362(b)(26) will not apply to this case, it does indicate that Congress is deeply concerned with a debtor's duty to pay taxes and the IRS' ability to collect

taxes, even in bankruptcy, with a minimum of delay and procedural difficulty. Congress would not view the IRS' actions here to be as outrageous as the Debtor does. Neither would Congress be as offended at the IRS' handling of this matter as the Debtor demands that this court should be.

**Conclusion.**

Based on the foregoing, the IRS' motion to setoff the Debtor's 2004 income tax overpayment will be GRANTED. The IRS may credit the Debtor's 2004 Overpayment against the priority portion of the Debtor's pre-petition tax liability and the IRS shall file an amended proof of claim to reflect the remaining priority claim balance. The Debtor and the chapter 13 trustee may stipulate to reduce the Plan payments to reflect the amended priority claim, without the necessity of an amended plan or a noticed motion.

Dated: September 29, 2005

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

DATED: 9/29/05      By: _____
                                                Deputy Clerk

EDC 3-070 (New 4/21/00)

Case 05-10567    Filed 09/29/05    Doc 92

| | | |
|---|---|---|
| Office of the US Trustee<br>1130 O St. Room 1110<br>Fresno, CA 93721 | Bruce Leichty<br>625-A 3rd St<br>Clovis, CA 93612-1145 | James Whitten<br>55 S Market St #505<br>San Jose, CA 95113 |
| Nora Rivera<br>402 N MARION<br>FRESNO, CA 93727 | M. Enmark<br>3447 W Shaw Ave<br>Fresno, CA 93711 | |